We have four appeals to hear this morning. Counsel, we're familiar with your cases. We've read your briefs. The authorities cited in your briefs. We've looked at at least portions of the records. So, you don't have a lot of time this morning. Feel free to get straight to the heart of your argument. We're probably going to have some questions, but be mindful of the traffic lights. When the red light shines, it's time to stop. As Judge Edmondson used to say, please do not treat the red light as aspirational. But if you're answering a question from the court, of course, you're on our time, and you can finish your answer. But be mindful of our time. You won't lose any rebuttal time. We're going to begin this morning with United States v. Beasley. Ms. Mandel. May it please the court, I'm Roberta Mandel on behalf of Ronald Beasley, II. Your Honors, I know that you have read the briefs. I just want to emphasize that my client, Mr. Beasley, is from a Navy family. He himself was a licensed pharmacist with the Navy. His father is a retired Navy captain, mother, retired investigator for the U.S. Department of Labor, and his sister is in the JAG Corps. He grew up Navy, and this was all the man wanted to do. While waiting for a commission to work in a pharmacy, he accepted a position to work in an outside pharmacy, not connected with the Navy, while he waited. It's usually a two-year process before you can get into a commissioned position as a pharmacist in the Navy. So he took a job as a pharmacist, unbeknownst, in a pharmacy that was already under investigation for Medicare fraud. You need to speak into the mic. I'm sorry. She herself, in 2020, was investigated, and there was an ongoing conspiracy to commit Medicare fraud between 2013 and 2019. Mr. Beasley was arrested for conduct between 8-17 and 2-19. Interestingly enough, there was no evidence that showed that he committed any of the offenses that he was convicted of. Well, what about the money? The video of him taking money, I think, from a customer and pocketing it, as opposed to putting it in the register. My understanding from your arguments on appeal is you're challenging some of those videos as extrinsic evidence, as opposed to, I think, the court found it intrinsic. Well, yes, Your Honor, and I'm glad you asked that question, because the testimony was, and the testimony from the pharmacy owner herself, was the pharmacy was not located in a very good area, and the policy was to take money up front from the customers, put it in your pocket, and then go deposit it in the back. On the video, it is seen that he, it was a cash transaction, and he took the money for the prescriptions, and then he went and he deposited it in their back room. There was no money kept in the front, so he was just doing exactly what he was instructed to do. I thought there was, he had made a statement about $60,000 at issue, and that he had paid it back through a side business, so it sounded like he had acknowledged that he had taken some money, and that he was paying it back, as opposed to what you're saying now, which was this was just standard operating procedure for the pharmacy. Your Honor, he never acknowledged that he took money from the pharmacy. What ended up happening, my client is a very young man, and he was living with wanting to be in the Navy. The pharmacy owner hired an investigator who confronted my client about taking money, and he had money cashed from a side business. He sold high-end sneakers, and even the pharmacist had bought a pair for about $300. Ms. Mandel, I'm really having a hard time figuring out, though, how anything you've said this morning relates to the issues you've argued in your brief. You didn't raise a sufficiency of the evidence challenge, did you? What we did raise was the fact that he was not charged with theft. That's true, but the evidence the district court determined was intrinsic because he had a good reason to want to inflate the profits of the business where he was the pharmacist in charge, through the fraud that it was committing, because it was benefiting him in that he was able to skin money off the top for himself, too. Your Honor, they never discovered any money. There was no finding that he actually . . . There was testimony, was there not, from the owner that he had taken about $200,000. Your Honor, that money was never found. As a matter of fact . . . That's not the question. My question was, was there testimony to that? There was testimony that . . . By the owner, right? By the owner. That the jury could have credited. They could have. Yes, and because there was a guilty verdict, we have to grant that inference in favor of the government's case. That is the law. That is quite true. There was evidence that he stole $200,000. I want to point to something in the record that the judge said. The judge said, and this is docket entry 141 pages 63 and 64, I don't see where you profited from the conspiracy other than your salary, which the government is claiming is subject to forfeiture. I haven't figured out yet why they brought you in, to make you the fall guy, or if they brought you in and then after you came, they decided to make you the fall guy. There was absolutely . . . The judge himself . . . decided this case, right? That is true. The jury returned a guilty verdict. They did. Okay. Again, we don't have a sufficiency of the evidence argument. What I'm trying to figure out . . . You had raised arguments about whether there should have been a new trial granted based on supposedly newly discovered evidence in the form of a sentencing memorandum. You had raised an issue about the admission of this uncharged theft, which the district court found was intrinsic evidence. You've got four issues, I think, that you had raised on appeal. I'm just wondering how anything you've said this morning really relates to those four issues. The motion for new trial, Your Honor, turned out to be the sentencing memorandum of the owner of the pharmacy. In that, she stated they never falsified the prescriptions and they gave prescriptions that were good for the patients. They used a different substance in the compounding that was ineligible for reimbursement from Medicare. But at trial, the whole trial centered on the government's argument that they were shortchanging the customers. They didn't buy enough supplies, that the material was dangerous. It was not the same argument that she presented in her sentencing memo, that there was nothing dangerous. The sentencing memo, I think we can say that's pretty self-serving at that point. The majority of her comments are all about her childhood, her hard work, her dedication to her family. That's really just her effort to get a lenient sentence. I'm not sure it was intended to present evidence. It's a legal argument, right? It's not evidence. It's factual, too. The government . . . It's not testimony. It's the argument of her lawyer to the court about how she should be sentenced, right? Well, yes, except that it was based upon a totally different theory of the case. Was it really a totally different theory? Because she had testified about the fact that they were using bulk ingredients, which is not permitted. And this is just a justification for, yes, her testimony was, well, we were using these bulk ingredients, but we were still trying to deliver the same product to the patient. I don't see how those two things are different, her trial testimony and then what's in the sentencing memorandum. She's just justifying the fraudulent behavior in using the bulk ingredients that she talked about at trial. She's now justifying that same behavior she admitted to in her sentencing memorandum. How is it new evidence? Well, it's new evidence because at trial they said that that substance was dangerous to the patient and they used all types of substances that didn't belong in that at all. But isn't that part of the concern about why bulk ingredients are not reimbursable? It is part, but we also have other issues on appeal that really prejudiced my client. If I could get into those as well. Got a minute and a half. I'll talk fast. And I'm particularly interested in Ms. Katami and the Fifth Amendment, the invocation of that and why is it your client is maintaining the evidence or her testimony, what she would testify to, was not introduced through other means? Well, the government basically tied the defense's hands because we have the mother of the pharmacist, Katami, and she's the one who did the compounding and the government did not offer her immunity nor did they charge her. So, there was no way to get testimony from her. From her, but my understanding is your client wanted her to talk about the operations of the pharmacy, which you just shared with us in the beginning of your presentation, how the money worked, all of those things, which seems like that was already introduced. So, I guess why wouldn't her testimony constitute cumulative evidence as opposed to getting it only through her? Because there was no one who testified how that compound was actually made. There was nobody that testified that my client, you know, he didn't do the banking. All he did was, you know, he took the money. He didn't know anything about the financial operations of that business. And he didn't pay money from his 401K because he wanted to become a pharmacist. But just to be clear with your limited time left, is it still your contention that the That's correct, Your Honor. And let me ask one follow-up. When you're talking about the government's failure to grant use immunity, have you in any way shown that there's any government misconduct in failing to grant either immunity or charge her? We didn't focus on that, but what we focused on was that my client's hands were tied as putting on a defense. Your argument is that the government . . . it was that the district court denied you an opportunity to provide a complete defense by not ordering the government to give immunity That's true. to this witness. And the problem with that, it seems to me, is that the decision whether to grant immunity or not is one that belongs to the executive branch. And a court has no power to compel the executive to do that. You're faulting the district court for doing something it lacks the power to do. I understand that, but the end result was that my client was denied a fair trial. And that transcript of her testimony, because they did take the testimony, it just wasn't divulged to my client. It was sealed, and I had to file a motion to unseal it. And it was finally unsealed, and that's why there is an amended brief in this case. Okay. Ms. Bendel, you've gone over, but you've been answering our questions. Let's hear from the government. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. Javier Sinha on behalf of the United States. I'd like to take the issues in the order in our brief, unless the Court has any questions about any other issues out of order. I'm particularly actually interested in the Fifth Amendment claim, and can you respond? Do you agree with her position that the evidence or the testimony that Ms. Katami would have presented was not otherwise introduced during the trial? I think there's some that wasn't otherwise introduced at trial, but all of it could have been introduced through Haji Abadi's testimony, because she was at the pharmacies from the very beginning, and she worked with both her mother and with Beasley, so she knew how the pharmacy worked. She knew how the pharmacy built. She knew how the compounds were made. So Beasley could have asked Haji Abadi any of the questions he had for Katami during the cross-examination of Haji Abadi. So you're saying he had an opportunity, and he missed it to the extent that the evidence could have been introduced otherwise. That's exactly right, Your Honor. I'll also quickly note that this issue is reviewed for plain error here. Beasley never actually asked the government to immunize Katami. The quote he cites in his brief is actually from Katami's counsel. There's never any indication that he believed the government's failure to immunize Katami would somehow deprive him of his right to present a complete defense. Well, the government, as I understand it, maintained even two years after the pharmacist was investigated that they were still investigating Katami, which gave her that concern about incriminating herself. But two years after other people are investigated and charged, it does seem a little suspect. So the government, I don't think, commented on what investigations were currently happening. The government simply said that Katami was a subject of the investigation that led to the prosecution of Haji Abadi and Beasley. But I think there is no comment on what was currently happening at the time. We generally don't comment on active or possibly active investigations, Your Honor. No, I understand that, but for purposes of why she felt the need to invoke her Fifth Amendment right, my understanding from the record, it is because, in part, the government maintained that she was subject to investigation. So the government said she was a subject of the investigation, which is sort of a term for a person whose conduct brings them within the scope of the investigation but they're not a target, which is usually someone the government believes committed a crime that they're going to prosecute. So are you saying that she didn't have a reasonable fear of being prosecuted than if she testified? That's not correct, Your Honor. I think the district court properly found she has a reasonable fear, and I think Beasley hasn't challenged that on appeal, and so this court did not reach that decision. But the government statement was about her being a subject of the investigation, not that she was subject to investigation, which simply means her conduct brought her within the sphere of the investigation here. If there are no more questions on this issue, I'm happy to move on to other issues. The first issue is Beasley's new trial motion. Beasley has not carried his burden of showing the district court abuses discretion in denying his motion here. As Your Honor suggested, this is a legal argument by defense counsel for a lenient sentence. It's not new evidence. Even if it were new evidence, it's not clear it was inconsistent because she testified similarly at trial, and this was also the— Don't they typically have district courts instruct juries that arguments of counsel are not evidence? That's exactly right, Your Honor. So even if it were new evidence here, as a district court found, it simply wouldn't have made a difference at trial, and as Beasley himself mentioned in his own brief, it would simply work as impeachment evidence against Haji Abadi and other government witnesses, and impeachment evidence is not enough to satisfy Rule 33. The court has no questions on that. I'll move on to the second issue, which is the final one for us today, which is the evidence of Beasley stealing cash. Beasley has only challenged that evidence under Rule 404B in this court. The district court did not find this was 404B evidence. It found this was intrinsic evidence, and so the argument in this court today is abandoned. Even if this court were to reach it, there's no abuse of discretion here. This was inextricably intertwined with the evidence and completed the story of the crime because it showed how Beasley profited from the scheme here and why Beasley would engage in a scheme to make money. I apologize. No. If there are no more questions, Your Honor. It sounded like you were at the end of your presentation. I believe I am, Your Honor. If there's no more questions, I'm happy to rest on the briefs. Thank you. I don't hear any questions. Thank you, Mr. Esenhoff. Ms. Mandel, you saved three minutes. Yes, Your Honor. I would dispute the fact that the money, you know, he was not charged with taking money from the pharmacy. It was not something . . . That's true. It's uncharged conduct. Right, and it's severely . . . It wasn't admitted, though, under 404B, right? It was admitted as intrinsic, necessary to complete the story is what the assistant U.S. attorney just said. That is the basis on which the district court admitted the evidence, right? That is true, but I believe . . . And the reasoning was that this was profit that gave him a motive to participate in this fraud, right? That's the reasoning. That is the reason. Okay, what's wrong with that? That there was no money found. This man had no financial interest in this, and the court, as I quoted before, pointed that out. Didn't he pay back 60 grand? He paid back money that he thought would lead him to be able to . . . because he didn't want anything to defer the fact that he was finally getting a commission to be a pharmacist. So he wanted to put an end to that, and it was worth it to clear out his 401K to do it. Was it a smart thing to do? Not really, except that it didn't show that he took the money. Wasn't there also testimony of the private investigator that when he confronted Beasley about the theft, Beasley explained he took the cash because he thought he was working a lot of hours and Hajabadi was basically an absentee owner and he was running the place and he thought he deserved more money? He didn't actually say that he took the money. He did make that statement that he thought he deserved more, but he didn't acknowledge taking the money from the pharmacy. That never . . . But this testimony was presented to the jury. It was. The jury was entitled to draw that inference from his statement. They couldn't do that. But there also was presented to the jury, and one of the FBI agents actually testified. I thought there were also bank records that showed large cash deposits in addition to his salary, right? I don't believe so, Your Honor. If I'm incorrect, then I'm mistaken. But, again, he did have a solid business of selling these very expensive sneakers at $300 each. And, Your Honor . . . And there's the video of him taking the cash and not putting it in the register. And there's testimony that that was what he was instructed to do, and the pharmacist herself acknowledged . . . These are good jury arguments, perhaps, Ms. Mandel. But the problem is when we have a jury verdict and you could have an inference that goes the other way and the jury drew the inference in favor of the government, we have to credit that. But the problem is that they should have been allowed to speak with the mother. The mother is the one who did the compounding, and that was the crime. Okay. I think we understand your case, and we appreciate your time this morning. Thank you, Your Honors. I just want to ask this court to reverse. You know, he already served his time, but he would like to be in the Navy, and he would like his pharmacy license back. Thank you. Thank you. We'll move to our second case, a consolidated United States case.